**Ruby Cook, Plaintiff-Appellant, v. Homer Boothman, Defendant-Appellee.**

Gen. No. 59–O–7.

Fourth District.

March 9, 1960.

Released for publication March 28, 1960.

John R. Sprague, of Belleville, for plaintiff-appellant.

McGlynn, McGlynn, and Rain, of East St. Louis (Frank M. Rain and James B. McGlynn, of counsel) for defendant-appellee.

JUSTICE HOFFMAN delivered the opinion of the court.

This was an action for personal injuries arising out of an automobile collision. After a trial by jury, verdict was rendered for the defendant. Judgment was entered upon this verdict by the court, and it is from this judgment that plaintiff perfects this appeal.

The collision occurred on June 6, 1957, at about 4:45 p. m. near the junction of routes 157 and 50 in St. Clair County. Route 157 runs generally north and south and crosses over route 50 which runs generally east and west. To the north of the overpass, a ramp leads up from route 50 in a northwesterly direction and forms a Y junction as the two roads merge. The ramp leading up from route 50 is the preferential highway, and a stop sign controls traffic from the south on route 157 heading north into the Y. From this stop sign, it is a distance of several hundred feet to the merger of the main traveled portion of route 157 and the ramp. Except for this one stop sign, there were no other traffic controls at the intersection.

At the trial, the only occurrence witnesses to testify were the plaintiff and the defendant, and they told conflicting stories with regard to the exact location of the collision.

The plaintiff testified that she was driving north on route 157, that she stopped at the stop sign, waited for three cars to pass, and while stopped was struck suddenly from the rear by the defendant.

The defendant testified that he was also driving north on route 157; that he saw plaintiff as she stopped at the stop sign; that he was then 100–150 feet behind her; that plaintiff moved out ahead and defendant came up to the stop sign and stopped; that while de-

554

fendant was at the stop sign he was not watching the plaintiff ahead of him, but was observing the ramp coming up from route 50; that a car was coming up this ramp from the southeast and defendant kept his eyes on that car; that as he watched this car he put his own automobile in motion; that as he did this he didn't look towards the plaintiff; that he accelerated to 10–15 miles per hour, still watching the car on the ramp; that he suddenly turned to look ahead and saw plaintiff's car stopped directly in front of him; that he was then about one car length behind plaintiff, he jammed on his brakes, but could not avoid hitting the plaintiff from the rear; and that plaintiff was stopped "on the highway" about 150 feet from the stop sign.

The plaintiff argues that the defendant was guilty of negligence as a matter of law, that plaintiff was free of contributory negligence, and that, therefore, the trial court should have directed a verdict for the plaintiff. To support this position, she cites Ceeder v. Kowach, 17 Ill.App.2d 202, 149 N.E.2d 766; Harrison v. Bingheim, 350 Ill. 269; Crowe Name Plate & Mfg. Co. v. Dammerich, 279 Ill. App. 103; Bell v. Illinois Farm Supply Co., 334 Ill. App. 216, 78 N.E.2d 838; and Russell v. Consolidated Forwarding Corp., 330 Ill. App. 529, 71 N.E.2d 853.

In the Ceeder case, supra, the plaintiff and the defendant were driving their automobiles in the same direction. Both cars were in the same lane with defendant 10 to 15 feet to the rear. About 100 feet from an intersection, both cars were held up momentarily for traffic. When they started again, defendant stayed to the rear at a speed of 10 to 15 miles per hour. At the intersection plaintiff stopped his car for a red light, and defendant's car skidded on wet pavement and the collision resulted. The court said on pages 203 and 204 of 17 Ill.App.2d, on page 767 of 149 N.E.2d:

"We think defendant was guilty of negligence as a matter of law since it is our opinion that he should have foreseen that plaintiff would probably have to stop for a red light; that traffic on adjoining lanes would prevent turning out of the way of plaintiff's car; that he would have to apply his brakes; that his car would probably skid on the wet pavement if the brakes were applied too suddenly; and that if he were going too fast or was not far enough behind he would collide with plaintiff's car. The fact that his car skidded into plaintiff's car, even though the pavement was wet, leaves room for no other inference, we think, except that under the circumstances defendant 'was driving too fast or following . . . . too closely.' "

In the Harrison case, supra, the defendant, in order to avoid striking a car that suddenly had pulled away from the curb in front of him, turned his own car to the left, and in so doing, collided with the plaintiff's car, which was approaching from the opposite direction in its proper lane. In holding the defendant liable, the court said on page 273 of 350 Ill.:

"If a driver omitting to use reasonable care in the control of his automobile and about to collide with another suddenly changes his course and collides with a car traveling in its proper place he cannot escape liability for striking the latter car. . . . It was his duty to anticipate that cars would withdraw from their parking space and that cars would be going east on the opposite side of the street. It was his further duty to use reasonable care not to collide with either. The undisputed evidence shows that he ignored both duties.

"The circuit court correctly directed a verdict against the defendant. There was nothing left to submit to the jury except the question of damages. . ."

In the Bell case, supra, an action was brought for damages to an automobile sustained in a collision with the rear of a gasoline transport truck which had stalled

on the pavement at night when the brakes locked. The Appellate Court, in reversing a judgment against the trucker, analyzed the evidence and concluded that there was an accidental break in the truck's mechanism which gave to its operator no choice other than to permit it to remain upon the pavement. It stopped because it became disabled. When it stopped, it was adequately lighted and continued to be during the time it remained on the highway. Numerous witnesses testified to the lighting around the truck and the court commented that apparently the plaintiff was the only person who failed to observe the lights. In this regard, see also Jacobson v. Chicago Motor Coach Co., 328 Ill. App. 131, 65 N.E.2d 142.

In the Crowe case, supra, plaintiff approached an open city intersection and collided with defendant. This court, in reversing a verdict for plaintiff, found that the manifest weight of the evidence established that plaintiff could have seen the other car in ample time to have stopped, and thus could have avoided the collision had he kept a proper lookout. This court then said on pages 108 and 109 of 279 Ill. App.:

"The driver of appellee's (plaintiff's) car did not testify that he looked in any direction as he approached the crossing, and the proof thoroughly establishes that he did not do so. This failure to so look was negligence as a matter of law."

In the Russell case, supra, the undisputed evidence showed that the defendant's truck was stopped momentarily just south of a barricade for the sole purpose of permitting approaching southbound traffic to pass the barricade so that the truck could drive to the left of the barricade when approaching southbound traffic had passed and then proceed northerly. The court said on page 537 of 330 Ill., on page 856 of 71 N.E.2d:

"Not only did the truck driver have the right to so stop his truck, but the undisputed evidence shows he

557

was compelled to do so. . . . It is our opinion that there is no evidence fairly tending to show any negligence on the part of the defendant in the mere stopping of its truck as it did. . ."

■ These cases, collectively, appear to hold that the driver of an automobile who does not maintain a proper lookout for traffic ahead is negligent. They do not hold that every person who is struck by such a driver is free of contributory negligence and entitled to recover as a matter of law. In the cases cited, the record clearly established that the person who was struck was properly upon the highway and not performing any negligent act. This is not the situation here. This record does not indisputably establish that the plaintiff was either at the stop sign or properly operating her car some distance beyond. Thus, when plaintiff says in her briefs that "She quite properly stopped her automobile in a normal manner in obedience to the traffic situation in order to permit the car approaching at the intersection from the right up the ramp to clear the intersection," or "that there is no suggestion in the record that she was guilty of contributory negligence," she begs the question of her contributory negligence. From our examination of the record, we observe that the jury was entitled to believe either the plaintiff or the defendant. If the plaintiff's version were believed, this case would be similar to Ceeder, but only a general verdict was returned here, and we cannot say that this was the fact. Thus, if the defendant's version were believed, the plaintiff then was not at the stop sign when she was struck, but had left the safety of the stop sign provided for her in Ceeder and proceeded out into the streams of traffic. There was no evidence that she was immunized from contributory negligence by becoming disabled, as in Bell, or by being up against a barricade, as in Russell. She left that area wherein Ceeder gives her

558

the protection of the law and voluntarily subjected herself to the rule of the reasonable and prudent person. From that point on, her action was to be judged by the jury, not by the court. Whether or not she should have proceeded into the intersection when she did, whether or not there was any traffic to yield to, whether or not she should have stopped where she did, and many such questions, were not questions of law, but questions of fact for the jury. Only if reasonable minds would not disagree may the court remove this decision from the jury. We do not mean to condone nor approve defendant's driving, rather it is our holding that plaintiff, to recover, was required to prove her freedom from contributory negligence as well as prove defendant's negligence; that her conduct was a question of fact for the jury; that there was sufficient evidence in the record to justify their verdict in favor of the defendant; and that, therefore, the trial court quite properly, under the facts of this case, refused to direct a verdict for the plaintiff.

■ ■ The plaintiff has also rested this appeal upon several complaints regarding the manner in which the jury was instructed. These points cannot be considered because she failed to abstract all of the instructions given. It has been uniformly held by our courts that error cannot be predicated upon the giving, refusal or modification of instructions unless all the instructions are set out in the abstract, because there may have been other instructions given which cured the errors of which she complains. Pantlen v. Gottschalk, 21 Ill.App.2d 163.

Finding no error, we must affirm the judgment below.

Judgment affirmed.

SCHEINEMAN, P. J. and CULBERTSON, Jr., J., concur.